UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 19 CR 819 |
| v. | Judge Manish S. Shah |
| CALVIN CARTER | |

ORDER

Defendant's motion for reconsideration [71] is denied. Defendant's motion for severance [73] is denied. Defendant's motion to suppress [76] is denied. Defendant's motion to exclude evidence [75] is denied in part, granted in part. The government must provide an affidavit affirming or denying the use of a cell-site simulator or equivalent technique. The government's affidavit is due 1/11/21. Defendant's pro se motion [89] is denied because defendant is represented by counsel and may not file pro se motions while represented by counsel. *See* [87].

STATEMENT

*Motion to Reconsider*

Defendant Calvin Carter seeks reconsideration of the order denying his motion for a *Franks* hearing. *See* [70]; *Franks v. Delaware*, 438 U.S. 154 (1978).[1] Although such motions are not codified in the Rules of Criminal Procedure, they are part of criminal practice. *United States v. Rollins*, 607 F.3d 500, 502 (7th Cir. 2010). Looking to their analog in civil practice, they serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence. *See Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (quoting *Keene Corp. v. Int'l Fid. Ins. Co.*, 561 F. Supp. 656, 665 (N.D. Ill. 1982)).

Carter argues that his showing of inaccuracies in the search warrant application (coupled with new information he recently received in discovery) was enough to convene a *Franks* hearing and that my questions at oral argument amounted to an impermissible pre-*Franks* hearing. The latter point is a non-starter. Although I elicited information about the AUSA's knowledge of some underlying facts and asked for clarification about how law enforcement personnel associated Carter

---

[1] Bracketed numbers refer to entries on the district court docket, and referenced page numbers are from the CM/ECF header placed at the top of filings.

with the subject premises in databases, these questions merely focused on representations in the existing briefs. *See* [78] at 3–10. No evidence or testimony was admitted, and all that was established was that the government had no concrete explanation for the database association. *See* [70] at 3 n.2. This did not bolster the government's position; if anything, it highlighted defendant's point that the prosecution's disclosures had suspicious gaps. I did not rely on the information in assessing the materiality of the database information; the staleness of the database reports made them immaterial whether or not the government had a good explanation for the data. *See* [70] at 5. In *United States v. McMurtrey*, 704 F.3d 502, 507–508 (7th Cir. 2013), the district court heard and considered sworn testimony bolstering probable cause in a procedurally erroneous pre-*Franks* hearing. At oral argument here, I sought to understand the facts represented in the briefs; this was not inappropriate.

Carter argues that the inaccuracies and omissions in the warrant affidavit were material. [71] at 2–3. This is the same argument presented in the original motion and not a reason to reconsider the decision. In reply, Carter adds that probable cause to search the premises depended on evidence that Carter lived there and that the surveillance evidence showing Carter entering and leaving the premises when engaged in drug dealing between October 7 and 16 was not enough to support a search warrant on October 25. [83-2] at 12. I disagree, for the reasons explained in the decision denying the original motion: Carter's observed connection to the premises in October supplied probable cause to believe that Carter used the location as a residence during his drug deals and there was no evidence that Carter lived somewhere else at the time (or that the agents knew that but omitted it from the warrant). [70] at 6–7 & n.4. Carter points to new evidence that the government knew that the gas service at the premises was in someone else's name. [83-2] at 12–13. Investigating agents also knew that this same person listed the subject premises on his driver's license in 2017. [83-2] at 13–14. The omission of another person's association to the residence (in the form of a utility bill and two-year-old traffic stop) was not material to the probable cause to believe that Carter was using the townhome as a residence during his drug deals in October 2019. The probable-cause question did not depend on whether additional people might have access to the house, but whether Carter's drug-dealing and simultaneous use of the townhome was enough to believe that evidence would be found at the premises. Nothing about this other individual's connection the premises undermines the evidence that Carter used the house when he did deals in October 2019. This was enough to believe that evidence of drug offenses would be found at the premises. Carter has not made a substantial

preliminary showing of material omissions to justify a *Franks* hearing.[2] The motion to reconsider is denied.

*Motion to Suppress Firearms, Ammunition, and Bullet-Proof Vest*

When searching the townhome, agents found guns, ammunition, and a bullet-proof vest in a closet. Agents found drugs, drug paraphernalia, and more guns in the kitchen—a different room some distance away from the closet. Carter argues that the seizure of the evidence from the closet exceeded the scope of the search warrant.

The search warrant listed the items to be seized and did not list guns or gun-related items. [76-1] at 4–5. The government argues that the warrant authorized the seizure of "all evidence" concerning drug trafficking, and since guns are a tool of the drug trade, they fell within the scope of the warrant. [81] at 14. The search warrant did not authorize the seizure of "all evidence" concerning violations of 21 U.S.C. §§ 841 and 846; it authorized the seizure of evidence "as follows" and listed specific categories. [76-1] at 4–5. If the warrant said what the government says it said, it would have been unconstitutional. A warrant that authorized a seizure of all evidence of a statutory violation would be a general warrant outlawed by the Fourth Amendment. *United States v. Stefonek*, 179 F.3d 1030, 1032–33 (7th Cir. 1999).

The magistrate judge did not include guns in the items to be seized. But the warrant did authorize agents to search the entire two-story dwelling at 4132 191st Place in Country Club Hills for drugs, large quantities of cash, and drug-distribution paraphernalia. [76-1] at 3–4. Carter argues that the affidavit in support of the search warrant included false or misleading information tying him to the townhome and should not be used to support an expansive search into every nook and cranny of the townhome. But as discussed earlier, the affidavit established probable cause to believe the townhome contained evidence of Carter's drug dealing based on his entry

---

[2] Carter also argues that evidence connecting someone else to the premises supports a showing that the affidavit's statements about a cooperating source were false and the CS was never shown any arrest photo of Carter taken by the Hammond Police Department because Carter was never arrested by that department. But nothing about another occupant of the premises undermines the CS's statements that Buzzy sold drugs around Country Club Hills—the two are not mutually exclusive and the new evidence doesn't suggest that the affiant fabricated the CS's statement. The statement lacks contemporaneous documentation but that is not a showing of reckless disregard for the truth. It is evidence that impeaches the agent's recordkeeping, but does not suggest subornation of false evidence by the agent. The absence of an arrest photo from the Hammond Police Department does not suggest reckless disregard for material facts because Carter does not deny that some arrest photo existed of him in a law enforcement database.

and exit from the premises through the attached garage during his October 2019 drug deals. [70] at 6–7 (it was reasonable to infer that Carter had access to and used the entire premises in connection with the drug sales). The magistrate judge properly issued a warrant for the entire townhome.

The warrant authorized agents to search the townhome (and any containers therein, [76-1] at 3). This allowed agents to look in the closet and inside bags or cases or anywhere that drugs, cash, or drug paraphernalia could be kept. *See Horton v. California*, 496 U.S. 128, 141 (1990) (police with a warrant for a rifle may search only places where rifles might be) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 517 (1971) (White, J., concurring and dissenting); *United States v. Eschweiler*, 745 F.2d 435, 439–40 (7th Cir. 1984) (agent was entitled to go through coat pockets because cocaine or money could easily fit into a pocket).

When searching the closet, the agents lawfully were searching for items described in the warrant. The guns, ammunition, and bullet-proof vest were then in plain view and the agents reasonably concluded that they were evidence or instrumentalities of crime. The incriminating nature of guns, ammunition, and a bullet-proof vest, found in a home where drugs, drug paraphernalia, and more guns were in the kitchen (and after the subject of the investigation engaged in at least two drug deals in recent weeks) was and is immediately apparent. Even if not inherently incriminating or illegal, the firearm evidence was especially suspicious in the context of the probable cause to believe Carter engaged in drug-related conduct. Weapons are a tool of the drug trade, and Carter was a known felon. That the guns were in a different room does not defeat the probable cause to believe that they were incriminating. The distance may undermine the proof beyond a reasonable doubt that the guns were possessed in furtherance of drug trafficking, *see United States v. Castillo*, 406 F.3d 806, 815 (7th Cir. 2005), but that level of certainty is not required to justify the seizure of the evidence. *United States v. Cellitti*, 387 F.3d 618, 624 (7th Cir. 2004) (officer must have probable cause to believe item is linked to criminal activity); *United States v. Cooper*, 19 F.3d 1154, 1163 (7th Cir. 1994) (there was probable cause to believe an empty ammunition box was incriminating evidence in a drug investigation of a convicted felon).

The motion to suppress is denied.

*Motion to Sever Counts*

Carter initially moved to sever trial on Counts V and VI of the indictment. [73]. Then for the first time in reply, Carter expanded his motion to include Count IV. [83-2] at 1. Arguments raised for the first time in reply are forfeited. That is reason alone to disregard Carter's motion as to Count IV. *United States v. Terzakis*, 854 F.3d 951,

957 (7th Cir. 2017) (district court was not required to address an argument that was not presented before the reply brief).

Count V alleges that Carter was a knowing felon in possession of firearms and Count VI alleges that Carter knowingly possessed firearms in furtherance of the drug trafficking crime alleged in Count III. The alleged possession of firearms in Counts V and VI occurred on or about October 29, 2019, at Country Club Hills, Illinois, and the drug charges in Counts I, II, and III allege conduct on October 7, 16, and 29, 2019, at Country Club Hills.

Rule 8(a) of the Federal Rules of Criminal Procedure allows an indictment to charge offenses that "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Where gun and drug charges are connected temporally and logically, Rule 8 permits joinder. *See United States v. Hubbard*, 61 F.3d 1261, 1270 (7th Cir. 1995). Count VI alleges that the gun possession was in furtherance of the crime charged in Count III—within its four corners, the indictment charges a connection between the acts in Count III and Count VI. Count V is temporally and logically connected to the drug crimes charged in Counts I through III: they all allegedly occurred in October in Country Club Hills. This is enough to join the gun and drug charges under Rule 8(a). *United States v. Blanchard*, 542 F.3d 1133, 1141 (7th Cir. 2008).[3]

Under Rule 14(a) of the Federal Rules of Criminal Procedure, charges can be severed if there is a serious risk that joinder will deprive a defendant of a fair trial. *See United States v. Davis*, 724 F.3d 949, 956 (7th Cir. 2013). Carter argues that the weak evidence tying him to the guns will be overshadowed by the evidence of the other charges and lead the jury to an unreliable verdict. I disagree. The standard jury instruction requiring separate consideration of counts reduces unfair spillover. *Id.* at 956–57; *United States v. Berg*, 714 F.3d 490, 496 (7th Cir. 2013). The evidence of Carter's connection to the townhome is relevant and admissible to prove the charge in Count III, and is similarly admissible to prove Counts V and VI. The firearm evidence is also likely probative of Carter's knowledge and intent to possess with intent to distribute the drugs charged in Count III. There is a non-propensity inference that knowing possession of guns suggests the knowing and intentional possession of drugs in the context of the dangerous yet financially remunerative drug business. Possession of either guns or drugs provide a motive for other. This suggests

---

[3] Although Carter forfeited his misjoinder argument about Count IV, that charge is a drug crime that is of the same or similar character as the drug charges in Counts I through III and is also connected to the other drug charges by time and place, indicating a common scheme or plan. Counts III and IV are based on the same events. Count IV is properly joined with the other counts.

that the evidence would be admissible under Federal Rule of Evidence 404(b). *See Hubbard*, 61 F.2d at 1270 (the firearm is an indication of drug trafficking, and participation in drug trafficking supplies a motive for having the gun). If the evidence of the counts to be severed would be admissible in the trial of the remaining counts, there is no unfair prejudice from joinder. *United States v. Quilling*, 261 F.3d 707, 715 (7th Cir. 2001).[4]

As proffered by the parties, the weakness of the evidence tying Carter to the guns will not be lost on the jury, and properly instructed, it will fairly evaluate the charges. The motion to sever is denied.

*Motion to Exclude Evidence Under 18 U.S.C. § 3504*

Carter invokes 18 U.S.C. § 3504 to exclude evidence. But suppression of evidence is not a statutory remedy under § 3504(a)(1). That statute simply provides a mechanism to get confirmation from the government about the use of allegedly unlawful techniques against an aggrieved party. The statute is a discovery tool, not an exclusionary rule.

Carter alleges that the government unlawfully used a cell-site simulator around May 17, 2017, and that is how the government connected him to the townhome. Carter's motion raises a claim that the charges are a result of the unlawful use of a cell-site simulator. In response, the government neither confirms nor denies the use of the technique; instead, it says "[t]here is no evidence that law enforcement used a cell-site simulator in this case." [81] at 12. This is not a proper response—it is not a denial and it is not under oath. *See Matter of John Doe Trader No. One*, 894 F.2d 240, 245 (7th Cir. 1990) (the government may deny allegation of unlawful electronic surveillance by submitting an affidavit denying the activity); *United States v. Warner*, No. 02 CR 506, 2004 WL 1794476, at *32 (N.D.Ill. Aug. 11, 2004) (government submitted an affidavit from AUSA).

Whether the evidence the government intends to use against Carter came from an unlawful technique is not the question presented. Carter made a claim—one based on a reasonable inference from the omission of information in the government's disclosures—that the government unlawfully used a surveillance technique. Section 3504 requires a response to allow for a later motion to suppress. Whether an independent source, the lawfulness of the technique, or the fact that the technique

---

[4] Count IV is closely related to Count III—both relate to the drug evidence found in the townhome. There will be no unfair prejudice from a joint trial of Count IV and the other counts, so even if Carter had not forfeited his argument, the motion to sever Count IV would be denied.

was never used justifies the admission of the evidence at trial is a question to be raised separately.

The government must respond, under oath, and state conclusively whether it used a cell-site simulator or similar technique against Carter on or about May 17, 2017. A lawyerly non-denial denial is insufficient.

ENTER:

Date: December 21, 2020

*/s/ Manish S. Shah*
Manish S. Shah
United States District Judge